J. D. SIMMONS and NANCY E. SIMMONS, Guardians, v. E. L. MANN.

*New Trial for Newly Discovered Evidence—Issues—Evidence—Fraud—Duress.*

1. The Supreme Court will grant a new trial for newly discovered evidence, where it is clear that substantial injustice has been done upon the trial below because of unavoidable failure to produce the evidence there, and where it is probable another trial will enable the right to prevail; but it will never be granted where the newly discovered evidence is merely cumulative or corroborative of the testimony offered on the former trial.

2. It is the duty of litigants to eliminate and tender such issues as they consider essential to present the merits of the action, before the trial begins; *after* the trial the objection that possible issues were not made comes too late.

3. The contents of a letter written to the plaintiff by his agent and borne by the defendant, but of which he was ignorant, are not competent evidence on the trial though they may be material to the issue.

4. The mere threat to employ force, or procure the arrest of the obligor in a bond if he refused to accept Confederate money in payment unaccompanied by any attempt to put the threat into execution, is not fraudulent *per se.*

5. The simple act of a guardian receiving Confederate money on debt due the estate of his wards in the year 1863, was not fraudulent, or the evidence of fraud as to them.

6. *Duress* was the only issue raised by the record in this action, and it was properly submitted to the jury.

(*Houston* v. *Smith*, 6 Ire. Eq. 264; *Dyche* v. *Patton*, 8 Ire. Eq. 295; *Dyche* v. *Patton*, 3 Jones Eq. 332; *Henry* v. *Smith*, 78 N. C. R. 27; *Cannon* v. *Dillenger*, 90 N. C. R. 226; *Kidder* v. *McIlhenny*, 81 N. C. R. 123; *Moore* v. *Hill*, 85 N. C. R. 218; *Alexander* v. *Robinson*, Id. 275; *State* v. *Shields*, 90 N. C. R. 687, cited and approved).

CIVIL ACTION, tried at Spring Term, 1880, of HYDE Superior Court before *Graves, J.*

The plaintiff brought this action to recover the money alleged to be due upon a single bond, executed by the defendant to the plaintiff, Joseph D. Simmons, guardian for two infant wards, dated the 10th day of February, 1860, for the sum of $422.18.

The defendant admitted the execution of the bond, but alleged that he paid on account of the same the sum of $500, and on the 7th day of July, 1863, took from the obligee therein his receipt in writing for that sum to be credited on the bond.

The plaintiff, Joseph D., alleged that the defendant, if he paid any money at all as alleged by him, paid only "Confederate money" to his agent, John R. Donnell, and procured the receipt mentioned from him by *duress.* He alleged in his complaint, that in June, 1863, the defendant "threatened that if said Simmons did not receive payment in Confederate money, that he would report him to the War Department in Richmond, said Mann then being a member of the Legislature, and as said Simmons believed, having power to cause his arrest and have him carried to Richmond; afterwards, during the month of July, 1863, in consequence of said threats, and fearing that Mann would have him arrested and carried off, he signed a receipt for five hundred dollars ($500.00) as part payment of said note due said wards, Mann telling him that he had made the same all right with Judge Donnell at Raleigh; but whether said sum of $500 was ever received by Judge Donnell for him, he did not know with certainty, he having written Judge Donnell to exercise his judgment in receiving it."

It appeared that the said Joseph D., at the times mentioned, resided in the county of Hyde, and that the late Judge Donnell, then residing at Raleigh, was his agent and adviser; and on the 8th of July, 1863, wrote him a letter from Raleigh, which was carried by the defendant and delivered to the said Joseph D. at his home in Hyde county. It did not appear otherwise than by

it that the defendant had any knowledge of the contents of the letter, or on what account or subject it was written. This letter was dated at Raleigh July 8th, 1863, and the material parts of it are in these words: "Dear Sir: I received yours by Mr. Mann. Your instructions did not allow me to receive his $500 as a payment on your note against him. * * * * He requested as a favor to leave the $500, however, which is left with Mr. Jones, subject to your order, if you shall think proper to receive it: otherwise to his order. I gave Mr. Mann a writing showing how it was received, which he will show you and which also extends to your $1,000 sent up by him."

On the trial the court, without objection, submitted to the jury only one issue, which is in the following words: "Was the alleged receipt of plaintiff for $500.00, dated July 7th, 1863, given under duress?" To this issue the jury responded "No," and the court gave judgment in favor of the plaintiffs for the sum of money mentioned in said bond with interest, less $500 paid upon the same, and the plaintiffs excepted.

The plaintiff Joseph D. was examined on the trial as a witness for himself, and testified fully in support, and to the effect of the allegations made by him in the pleadings.

The defendant was examined as a witnesss for himself, and denied that he made the threats as alleged, or any threats whatever, and testified that at the request of the plaintiff Joseph D. he paid $500 in Confederate money to his agent at Raleigh, Judge Donnell; that he voluntarily agreed to receive the Confederate money, and so executed the receipt in question.

On the trial, the plaintiff offered to put in evidence the letter received by him mentioned above. The defendant objected to the same—the court sustained the objection, and the plaintiff excepted.

After the trial the plaintiffs insisted that the pleadings raised the issue of payment and that the court erred in not submitting such issue to the jury.

The plaintiffs requested the court to instruct the jury, "that if the plaintiff had voluntarily received Confederate money in payment of the bond to him as guardian, it was a fraud in him against his wards, and defendant was a participant in such fraud and not entitled to avail himself of such fraudulent payment."

The court instructed the jury that there was no evidence of fraud in procuring the receipt mentioned, nor in the payment of the Confederate money to the plaintiff, and that the sole question was that presented by the issue submitted to them.

The plaintiffs assigned as error, first, that the court rejected the letter mentioned above; secondly, that the court instructed the jury that there was no evidence of fraud in procuring the receipt mentioned, or in the alleged payment of the Confederate money.

In this court, the plaintiffs moved for a new trial, and assigned as ground for the motion, that they had discovered new and material evidence since the trial in the superior court, that would prove the alleged duress, that they did not know of before and could not, by reasonable diligence, produce on the trial. The material part of the affidavit of the witness relied upon to support the motion is, that the witness "has heard the defendant Edward L. Mann say that he did make or get Joseph D. Simmons to take Confederate money on a claim, the amount he does not know, during the late civil war, by threatening to report him to the War Department at Richmond for refusing to take the currency of the Confederacy; that he has never disclosed the fact to plaintiff until this day."

Verdict and judgment for the defendant, and the plaintiff appealed.

*Messrs. G. H. Brown, Jr.,* and *Rodman & Son,* for plaintiff.
*Messrs. Gilliam & Son,* for defendant.

MERRIMON, J., after stating the facts as above: The motion in this court for a new trial founded upon alleged newly discovered evidence, cannot be allowed. Such motions are treated with

scrutiny, and the court is not disposed to grant them, except for substantial cause in cases that come strictly within the established rules of law applicable to them.

The evidence relied upon to support the motion is very general, indefinite and unsatisfactory in its character; it has no reference to the transaction in question, unless by remote inference; it may or may not refer to it.   Besides, it is mainly cumulative in its application in this case.   The plaintiff was examined as a witness for himself and testified to the facts constituting the alleged duress in strong and direct terms.   If the newly discovered evidence can be treated as having reference to the transactions referred to by the plaintiff, it tends mainly, but not very strongly, by reason of its indefiniteness, to corroborate him.   The witness states in general terms, that the defendant told him, that during the late civil war he induced the plaintiff Joseph D. Simmons to take Confederate money, by threatening to report him to the War authorities at Richmond for refusing to take the currency of the Confederacy.   He mentions neither the time nor place, when and where the defendant said so, nor is he able to designate the debt referred to, nor the amount of money mentioned.   So vague a statement cannot have much weight, however it may be applied.

This court will not grant a new trial for newly discovered evidence for light causes and considerations; it will do so, only in cases where it is very probable that substantial injustice has been done, by reason of the unavoidable failure to produce the evidence on the trial, and when also, it is probable that upon a new trial, a different result will be reached and the right will prevail. The court ought to be satisfied that the evidence has been discovered since the last trial; that it could not, by reasonable diligence, have been produced on that trial; that the witness will give the evidence; that it is probably true; that it is material; and such as, if believed, will, in a substantial degree, affect the question in issue.

The law affords the largest opportunity to litigants to have a just and fair trial, and this once had, ought to be the end of con-

troversy. A litigation ended, ought not to be renewed, except for substantial considerations, and because it appears with a reasonable degree of certainty that material injustice has been done.

*Houston* v. *Smith*, 6 Ire. Eq., 264; *Dyche* v. *Patton*, 8 Ire. Eq., 295; *Dyche* v. *Patton*, 3 Jones' Eq., 332; *Henry* v. *Smith*, 78 N. C. R., 27; *Cannon* v. *Dillenger*, 90 N. C. R., 226.

As is said above, the evidence relied upon is mainly cumulative in its application, and this is an objection to it in view of the purpose for which it is brought before the court. It is a well settled rule of law, that a new trial will not be granted upon the ground of newly discovered evidence, if the evidence is merely *cumulative*, or in corroboration of evidence received on the former trial in respect to a particular point, or in support of a particular allegation. Every party ought, if he can, to produce evidence on the trial sufficient in point of pertinency and weight to establish his allegation. If he fails to do so, it is his misfortune or his folly. The law will not multiply trials simply to enable him to correct his mistakes of judgment. The policy of the law is against multiplying trials in the same action. *The People* v. *The Superior Court*, 5 Wend., 114; The same case, 10 Id., 285; *Gordon* v. *Mitchell*, 6 Pick., 114; Graham on New Trials, 485, *et seq.*; Hilliard on N. T., 499, *et seq.*

The exception that the court did not submit to the jury an issue in respect to the alleged payment of the bond, or part thereof, cannot be sustained. The defendant admitted the execution by him of the bond sued upon, but he alleged in his answer that he paid upon the same $500, on the 6th of July, 1863, and took a receipt therefor. The plaintiff, on the contrary, alleged that if the payment was made, it was made in "Confederate money," and that the defendant obtained from him the receipt put in evidence, by duress. The whole pleadings and the evidence show that the real and the only issue was, whether or not the plaintiff executed the receipt mentioned under duress. The issue was submitted alone without objection, and it seems to have been accepted by the parties and the court as the sole material

one. If the plaintiff received the Confederate money and executed the receipt voluntarily; then, there was a payment; if, on the other hand, the money was received and the receipt executed by the plaintiff under duress, then there was no payment. This was the real contention, and there was no necessity for submitting an issue as to payment.

Besides, the plaintiffs did not suggest or ask that such an issue be submitted. If they desired it, they ought in candor to have said so; they had a right to suggest to the court such issues as they insisted were raised by the pleadings, or as were necessary to reach the alleged merits of the matters in controversy. Parties are required to be vigilant and cautious in the prosecution or defence of actions, and when they are not so, particularly in respect to matters they may or may not insist upon, it is too late after the time has passed by to do so, to complain that something was not done, to their supposed disadvantage. It is too late after the trial to complain that possible issues were not submitted to the jury, if they were not insisted upon before the trial. *Kidder v. McIlhenny*, 81 N. C. R., 132; *Moore v. Hill*, 85 N. C. R., 218; *Alexander v. Robinson*, Id., 275.

The letter offered in evidence was material, if competent, but it is very clear that it was not competent, because it was hearsay. The defendant bore a letter from Donnell to one of the plaintiffs. It does not appear that he had any knowledge of its contents, or had anything to do with it, except simply to carry it from the person who wrote it to the person to whom it was written. The writer was not the agent of the defendant, and the latter is not bound by or presumed to know anything he said, did or wrote, except, perhaps, that he gave instructions to deliver it. It cannot, therefore, be treated as a part of the transaction between the plaintiff, Joseph D. Simmons, and the defendant. It is plain that if it were proposed to prove something that Donnell said in respect to the money in the absence of the defendant, it would not be competent against him—it would be hearsay, a statement not made under oath in an action or proceeding where the defend-

ant might cross-examine him. What he said in writing under the same circumstances must stand on the same footing—the statements made in the letter were not made under oath—they were no more than his simple declarations in writing, with which, so far as appears, the defendant had no connection. *State v. Shields*, 90 N. C. R.

If the threats were made as alleged, they were not *per se*, or necessarily, fraudulent. It is not alleged that the defendant resorted to any shift or combination to circumvent the plaintiff Joseph D.; he simply made empty threats; he did not claim that he had any authority to execute them, nor does it appear that he took any steps towards doing so. The mere threat of a purpose to employ force and unlawfully seize and detain the person, is not of itself fraudulent in any legal sense.

It was in no sense fraudulent, or a fraud upon his wards, for the guardian simply to receive Confederate money upon a bond payable to him for them in 1863. It was not unlawful to receive or pay Confederate money in discharge of debts in that year. The guardian may have received it at the peril of making himself liable to his wards for neglect; but to take it in good faith in payment of a debt, was not fraudulent, nor evidence of fraud or fraudulent intent—it was not unlawful to take it; indeed it was, at the time mentioned, the principal currency used in all business transactions, public and private. So that the court properly told the jury that there was no evidence of fraud, as contended by the plaintiffs. It might have been otherwise if the letter offered had been competent.

It might be questioned, whether if the facts were as alleged by the plaintiffs, there was duress or constraint exercised by the defendant over the plaintiff Joseph D. in the execution of the receipt in question, recognized by the law, but the court and the parties treated the question of duress as properly raised, and the issue as to the same was fairly submitted to the jury. No exception was taken to the rulings of the court in respect to this issue. The plaintiff was examined as a witness for himself, and

the defendant likewise for himself, and the jury found that there was no duress.

We are unable to discover any error in the record, and the judgment must be affirmed.                           It is so ordered.