STATE v. WILL EDWARDS.

(Decided April 3, 1900.)

*Murder in the First Degree—Deliberation and Premeditation—Conspiracy to Kill—Aiding and Abetting to Kill—Confessions to an Officer—Policeman—Motion for New Trial for Newly Discovered Evidence—Judge's Charge—State v. Boyle, 104 N. C., 800, Overruled.*

1. Where there is no duress, and the prisoner has been cautioned, his statement to an officer, whether amounting to a confession or not, is competent evidence.

2. Where there is evidence of deliberation and premeditation, it is for the jury to say whether the killing is murder in the first degree or not.

3. The killing of a policeman, who is endeavoring to enforce a town ordinance against the use of loud, profane language upon the streets, by the arrest, without warrant, of parties guilty of it in his presence who refuse to desist, and curse him, can not be placed on the ground of self-defense.

4. It matters not, that it is questionable which of two parties fired the fatal shot, if the jury are satisfied beyond a reasonable doubt, from the evidence, that there was a conspiracy to kill the deceased, and that they were aiding and abetting each other.

5. A motion for new trial for newly discovered evidence is not entertained in criminal actions on appeal.

INDICTMENT for murder, tried before *Robinson, J.,* at November Term, 1899, of the Superior Court of ROWAN County.

The prisoner was indicted, along with Tom Carr, for the murder of William Kerns, a policeman of the town of Concord. The cause was removed from Cabarrus County to Rowan County for trial on affidavit of prisoners. They were both convicted of murder in the first degree. Carr was awarded a new trial by the trial Judge.

STATE *v.* EDWARDS.

Sentence of death was passed upon Edwards, and he appealed to the Supreme Court.

The homicide occurred at night on the street in. Concord. There was evidence of previous ill-will on the part of the prisoners towards the deceased, and of a concerted purpose to assail him that night. They approached him using loud and profane language, and when he checked them, they cursed him, and on his attempting to arrest them, one of them shot him and killed him.

The exceptions taken on the trial are noted and considered in the opinion.

*Mr. P. B. Means,* for appellant.
*Attorney-General,* for State.

CLARK, J. The only exception to evidence, the exception to the prisoner's confession, is without merit. There was no evidence of duress, in fact, the evidence was that there was none, and that the prisoner was cautioned, and confessions made to an officer without duress are competent. *State v. Whitfield,* 109 N. C., 876, and cases cited. Besides, it was in no sense a confession, but a denial. The prisoner, besides those of his prayers which were given, asked the Court to charge:

"1. In no aspect of the testimony and under no reasonable inference that can be fairly drawn from it, are the prisoners guilty of murder in the first degree."

"2. There is no deliberation or premeditation in this case, and at most the jury can only convict of murder in the second degree."

"3. If the jury believe that the deceased was appointed policeman for a special purpose to perform duty at the depot only, then he had no right to arrest the prisoner for boister-

ous conduct and loud cursing upon the streets away from the depot, without a warrant, and his act in stopping the prisoners and ordering them to go back with him would be in law an assault, and the prisoners had the right to defend themselves against said assault."

These prayers were properly refused. There was ample evidence of premeditation to be submitted to a jury. As to the last prayer, the Mayor of the town testified that the deceased had been a policeman two and a half or three months, and his duties were at the depot part of the time. There was no contradictory evidence, the Mayor merely saying that the duties of the deceased as policeman did not take up all of his time. Nor was there any evidence of an assault by the deceased. The prisoner and his companions were violating the town ordinance by loud use of profane language upon the streets; the deceased, who had on his policeman's uniform and cap and billy, spoke to them about it; the prisoner cursed him, whereupon deceased ordered him to come and go up town with him, as he could do without a warrant, (*State v. Freeman,* 86 N. C., 683), whereupon he was shot at several times by one or more of the crowd and killed. The only question arising upon the testimony is as to who in that party did the fatal shooting.

The prisoner further asked the Court to charge that "there is no evidence that the homicide was committed within the corporate limits of the town of Concord." This the Court refused, and when reading over the evidence he reached the testimony of Dr. Archey, he said: "Here is evidence that the homicide was committed within the corporate limits of Concord, and there is other evidence of it, to which I will call your attention." This is no expression of opinion "whether a fact is fully or sufficiently proved" which is forbidden by the Act of 1796, now ·Code, sec. 413, but was merely calling

the attention of the jury to evidence, the existence of which was denied by the prisoner's prayers for instruction.

The Court in addition to many charges, not excepted to, instructed the jury that "it made no difference whether Kerns (deceased) was acting in his official capacity as policeman, or whether the homicide was committed within or without the corporate limits of the town of Concord, if the jury are satisfied beyond a reasonable doubt that the prisoners killed the deceased upon a previously formed design to kill him, and under the circumstances deposed to by the witnesses upon the stand; the jury may find the prisoners guilty of murder in the first degree, even though the jury are satisfied that the deceased was a private citizen." There was strong evidence of a preconceived and avowed purpose on the part of the prisoners to kill the deceased, and if they did so, upon the uncontradicted circumstances, as above stated, the charge just recited was not erroneous.

His Honor, after giving several prayers for instructions, asked by the defense, was asked to charge: "If the jury are in doubt as to which of the prisoners shot the deceased, and have a reasonable doubt as to whether Edwards shot the deceased, or whether Carr shot him, then the verdict should be not guilty, as to both." This the Court refused to give till he had added: "Unless the jury shall be satisfied beyond a reasonable doubt that there was a conspiracy on the part of the prisoners to kill the deceased, or that they were aiding or abetting each other." The evidence justified the addition, which was properly made. *State v. Anderson,* 92 N. C., 732.

The other exception, "the failure of the Judge to state in a plain and concise manner the evidence given in the case and declare and explain the law arising therefrom," would not be justified even by *State v. Boyle,* 104 N. C., 800, which besides has been several times in effect overruled. *State v. Beard,* 124 N. C., 811. The case seems to have been left to the jury

in every phase presented by the evidence. The motion in this Court for a new trial for newly discovered evidence was properly withdrawn. Such motions are not entertained in appeals in criminal actions, as has been often held. *State v. Starnes,* 94 N. C., 973; *State v. Gooch, Ibid,* 987; *State v. Starnes,* 97 N. C., 423; *State v. Rowe,* 98 N. C., 629.

The murder appears to have been brutal and premeditated. The prisoner's cause has been presented with zeal and ability by his counsel in this Court, as doubtless it was in the court below, but we find no error of which the prisoner can complain.

No error.